WALTER HEBERT *vs.* THE HUG Co. *et al.*

FEBRUARY 18, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. The plaintiff brought this action of assumpsit against The Hug Company, a corporation, Oscar Menard and John Boulanger, by writ dated April 1, 1930. On June 12, 1933, the plaintiff was nonsuited as to the defendant Boulanger. The case against the two remaining defendants was tried in May 1936, before a justice of the superior court sitting with a jury. At the conclusion of the evidence the trial justice directed a verdict in favor of the defendant, The Hug Company, and left to the jury the question of whether or not the defendant Menard was liable to the plaintiff. The jury returned a verdict against Menard in favor of the plaintiff for $1027.50. The only exception urged and argued by the plaintiff, who thereupon prosecuted a bill of exceptions to this court, is to the direction of the verdict in favor of The Hug Company, all other exceptions being expressly waived by him.

The declaration is in two counts, the first of which substantially alleges an agreement by the defendants that if the plaintiff would act as "their representative" to sell Hug trucks they would pay him a commission for such sales. The second count sets out the common counts and seeks to recover for money alleged to be due to or expended by the plaintiff. To the declaration each defendant filed a plea of the general issue.

The evidence shows that on March 1, 1929, the defendant Menard, doing business as the Hug New England Truck Co., entered into a written contract with the defendant, The Hug Company, of Highland, Illinois, by the terms of which contract Menard became the New England distributor for The Hug Company, "to actively promote the sale of Hug Trucks in all parts of his territory." It was further provided by the nineteenth clause of the contract that "this contract shall not in any way constitute Distributor (Menard) an agent of Manufacturer (The Hug Company) to transact any business in its name or in its behalf . . . ." From the evidence it clearly appears that thereafter the plaintiff sold a number of Hug trucks in Menard's territory under an oral agreement with Menard, which he now contends made him a direct agent of The Hug Company. The chief issue in this case is whether or not there is any legal evidence tending to show that the plaintiff was an agent of The Hug Company, or whether he was merely a dealer in Hug trucks acting for Menard only.

The plaintiff's testimony relates mainly to his misunderstandings with Menard, who, according to the plaintiff's contention, owed him for commissions and other money which he had furnished and advanced in connection with the sale of Hug trucks. It is difficult to ascertain from the evidence the real ground of his claim against The Hug Company. His claim apparently is based upon certain inferences which he drew when he entered into his agreement with Menard, and upon the further fact that because he had sold

a number of Hug trucks, without having received his commission and incidental expenses from Menard, The Hug Company was therefore in some manner liable to him for those amounts. The plaintiff seemingly concluded, according to his testimony, that he was in some way a direct agent of The Hug Company because it was his belief that Menard was "the General Manager of The Hug Company here in Rhode Island"; because the business of The Hug Company was conducted by Menard at his office; and because a sales manager from the home office of The Hug Company the limits of whose authority was not established, and who had come to this state for some undisclosed purpose, said that they, apparently referring to Menard and the plaintiff, "were doing a good job."

Such a conclusion on the part of the plaintiff is not warranted by the evidence in the case, or by any reasonable inference therefrom, and is completely disproved by certain written communications between the plaintiff and The Hug Company. The former had been selling Hug trucks for about two months when he began writing to the home office of The Hug Company in Illinois. The plaintiff's own understanding of his business relations with Menard and with The Hug Company is best shown by portions of these letters to The Hug Company, which letters were produced at the trial by The Hug Company and not by the plaintiff. The general tenor of the plaintiff's communications, which in one instance he marked "strictly confidential", is that of constant complaint against Menard, and a clear desire on the plaintiff's part to have The Hug Company grant him direct authority to sell Hug trucks in Massachusetts and Rhode Island. Throughout the correspondence between the plaintiff and The Hug Company, the latter consistently notified him, without exception or qualification, that Menard was its distributor for New England, and that it could not accede to his request, and that he must do his business through Menard.

At the very beginning of his first letter to The Hug Company, dated May 13, 1929, the plaintiff identifies himself as follows: "I, Walter Hebert, a dealer in Hug trucks through Oscar Menard." In a letter written by the plaintiff's attorney on October 7, 1929, the following language appears: "A client of mine in the State of Rhode Island, who is engaged in the automobile repair and garage business, would like to secure an agency in Rhode Island and Massachusetts for the handling of Hug trucks." Then, after stating various complaints against Menard, the latter continues: "My client will not sell any more trucks under or as an agent to Menard. . . . He could do a splendid business for you at once. But the only thing necessary for him is an agency for your truck. If this territory is not tied up in any way, or if it is possible to grant to my client an agency in New England, please advise immediately . . . ." In a long letter of October 12, 1929, the plaintiff repeats his complaints against Menard, writing: "I was a fool to pay any attention to this Menard in the first place. . . . You can pay me, then discount it from what you owe Menard, if you do business the way he does it. He told me in the beginning that we were partners." As above stated, the answer of The Hug Company to these communications and others was uniformly that Menard was its distributor in the New England territory and that all the plaintiff's dealings must be through Menard.

Under the circumstances disclosed by the record in this case, we are of the opinion that the trial justice did not err in directing a verdict for The Hug Company. There is no legal evidence, oral or written, binding The Hug Company in any contractual relation with the plaintiff. All the evidence and the reasonable inferences therefrom show that the plaintiff was a dealer or agent for, or a partner of, Menard. The plaintiff's claim was clearly against Menard and not against The Hug Company.

The plaintiff's exceptions are all overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*Cianciarulo & Cianciarulo, Aram A. Arabian,* for plaintiff.

*Godfrey & Cambio, Gerald L. Bronstein,* for defendant.